IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GLENDA MALENA                                                                                    PLAINTIFF

v.                              CIVIL NO. 2:17-CV-2159

NANCY A. BERRYHILL,[1] Acting Commissioner,
Social Security Administration                                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Glenda Malena, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her current application for DIB on March 16, 2015, alleging an inability to work since November 22, 2014, due to Regional Sympathetic Dystrophy (RSD). (Tr. 59, 76).  For DIB purposes, Plaintiff maintained insured status through September 30, 2016.  (Tr. 59, 76).  An administrative hearing was held on June 6, 2016, at which Plaintiff

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

appeared with counsel and testified. (Tr. 38-52). Debra Steele, Vocational Expert (VE), also testified. (Tr. 52-57).

In a written opinion dated July 8, 2016, the ALJ found that the Plaintiff had the following severe impairments: complex regional pain syndrome, regional sympathetic dystrophy, obesity, migraines, anxiety, post-traumatic stress disorder, and depressive disorder. (Tr. 15). However, after reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 15-17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), with the following exceptions:

> [Claimant can] occasionally grasp, lift, push, or pull with the left non-dominant upper extremity; no exposure to extremes of cold; occasional exposure to dust, fumes, smoke, or chemicals; can understand, remember, and carry out simple instructions and tasks, and can concentrate on those tasks for extended periods of two or more hours at a time.

(Tr. 17). With the help of VE testimony, the ALJ determined that Plaintiff was unable to perform her past relevant work as a machine operator. (Tr. 22). However, based on the Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of work as a public area attendant or a photo finishing clerk. (Tr. 23). Ultimately, the ALJ concluded that the Plaintiff had not been under a disability within the meaning of the Social Security Act during the relevant time period of November 22, 2014, the alleged onset date, and July 8, 2016, the date of the ALJ's opinion. (Tr. 23).

Subsequently, Plaintiff requested a review of the hearing decision by the Appeals Council, and that request was denied on July 15, 2017. (Tr. 1-4). Plaintiff filed a Petition for

Judicial Review of the matter on September 13, 2017. (Doc. 1). Both parties have submitted briefs, and this case is before the undersigned for report and recommendation. (Docs. 15, 16).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.  Evidence Submitted:**

At the hearing before the ALJ on June 6, 2016, Plaintiff testified that she was forty-six years of age. She testified that she finished the tenth grade and later obtained her GED and her CNA license. (Tr. 41). Plaintiff's past relevant work consisted of work as a machine operator. (Tr. 52-53).

Before the relevant time period, Plaintiff was seen by various healthcare providers for the following health issues: left hand and arm pain due to Complex Regional Pain Syndrome, a persistent cough, anxiety, common migraine headaches, and a possible allergic reaction. During that time, Plaintiff had the following tests that yielded normal results: an x-ray of her chest, a CT scan of the soft tissue of the neck, an x-ray of her left wrist, mammograms, an EMG evaluation for carpal tunnel syndrome, an x-ray of the left hand, and a MRI of the cervical spine, which showed only minor chronic degenerative changes. Prior to the relevant time period, Plaintiff was treated conservatively with medication and multiple ganglion blocks.

Medical evidence during the relevant time period reflects that Plaintiff was seen at FS&V Physical Therapy for an evaluation of the symptoms in her left arm, where therapist Mary McKinley recommended therapy twice a week for eight weeks. (Tr. 360).

On February 10, 2015, Plaintiff was seen by Dr. Kelly Hubbard at Arkansas Pain Specialists for complaints of pain in her left hand, wrist, thumb, index, and middle finger. (Tr. 298). A physical exam of Plaintiff's left upper extremity strength, left shoulder, and left elbow was normal. However, Plaintiff's left wrist was tender with decreased range of motion, and Phalen's test was positive for carpal tunnel syndrome. (Tr. 301). Plaintiff was assessed with severe allodynia of the left hand and wrist and a note was made about a previous diagnosis of RDS. (Tr. 303). Dr. Hubbard also noted moderate depression. (Tr. 303).

On May 4, 2015, Plaintiff was seen by Dr. John Jacobs, her primary care physician, at River Valley Primary Care for abdomen pain and swelling, nausea and vomiting, lack of appetite. (Tr. 330). Dr. Jacobs prescribed medication and ordered additional tests. (Tr. 332). An abdominal ultrasound performed on May 5, 2015, showed fatty infiltration of the liver and a mildly prominent common bile duct. The remainder of the exam was unremarkable. (Tr. 340).

On May 18, 2015, Plaintiff presented to Mercy Hospital with complaints of abdominal pain. Hospital records indicate Plaintiff had recently received normal results from a CT scan of her abdomen. (Tr. 312). Records also indicate that an endoscopy report showed the possibility of little inflammatory change in the upper stomach, very minimal change in the distal stomach, no ulcerations, no other lesions, and good motility. (Tr. 316). Dr. John Smith's notes indicate that Plaintiff's endoscopy results were not in line with Plaintiff's symptoms. (Tr. 316). Plaintiff was assessed with mild to focal moderate chronic gastritis, and Dr. Smith recommended trying an ulcer medication to see if that would offer any relief. (Tr. 316, 320).

On May 29, 2015, Plaintiff presented at River Valley Primary Care for a refill of her omeprazole for her gastritis. (Tr. 330).

On August 18, 2015, Plaintiff underwent a Mental Diagnostic Evaluation by Dr. Patricia J. Walz, Ph.D. (Tr. 370-373). During that evaluation, Plaintiff reported she had difficulty attempting to function with the use of only one hand. Plaintiff also reported taking an antidepressant because of irritability; that her mood was related to the level of pain she was experiencing; and that she suffered a nervous breakdown fifteen years prior resulting in a diagnosis of bipolar disorder. (Tr. 370). Plaintiff stated that she did not think she suffered from bipolar disorder, but that she had been taking Citalopram for depression for two to three years. (Tr. 370). Plaintiff reported suffering mental, sexual, emotional, and physical abuse during her childhood. (Tr. 371). She also reported completing the tenth grade and later obtaining her GED, and she stated she could read well, do basic math, and manage money. (Tr. 371). Plaintiff reported needing assistance washing her hair and bathing, that she had a compression glove and a brace for her hand, and that her hand was too weak to lift anything. (Tr. 371). Dr. Walz noted that Plaintiff was dramatic in presentation and that her intellectual functioning was thought to be in the low average range. (Tr. 372). Dr. Walz diagnosed her with depressive disorder due to pain. (Tr. 373). She concluded that Plaintiff was able to drive, read, watch television and attend church regularly. She also observed that Plaintiff's speech was clear and intelligible and that Plaintiff could manage her own funds. (Tr. 373). Dr. Walz concluded that Plaintiff's social skills would be impaired by her irritability; that she would have problems with concentration and short term memory; that her pain would limit her capacity to sustain persistence in completing tasks; and that the speed of information processing was variable. (Tr. 373).

5

On August 20, 2015, a Psychiatric Review Technique was completed by Dr. Kay Cogbill, who opined that Plaintiff had mild restriction on activities of daily living; moderate difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. (Tr. 66). On that same day, Dr. Cogbill completed a Mental RFC Assessment, wherein she found that marked and severe limits were not evident, the rating was unskilled, and Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; complexity of tasks was learned and performed by rote, few variables, little judgment; and supervision required was simple, direct, and concrete. (Tr. 72).

Also on August 20, 2015, Dr. Alice M. Davidson completed a Physical RFC Assessment, wherein she opined that Plaintiff's medical records supported an RFC of light work. (Tr. 69).

On September 9, 2015, Plaintiff saw Timbi West, an APN at Schmitz Family Practice. (Tr. 378). Plaintiff presented to establish care based on pain in her left hand and arm. Plaintiff reported that her pain was as a result of a work injury that was misdiagnosed. She also reported that she was having trouble sleeping and was sad and irritable. (Tr. 378). Nurse West diagnosed Plaintiff with chronic pain in her left arm and numbness in her left thumb, referred Plaintiff to a neurologist, and suggested Plaintiff see a psychiatrist. (Tr. 379).

On October 6, 2015, Plaintiff presented at River Valley Primary Care with complaints of left arm pain and leg issues from a fall she sustain a couple of weeks prior. (Tr. 382). Dr. Thinh Nguyen observed that Plaintiff's gait and stance were abnormal, she had a limp, and she

was using a cane. Dr. Nguyen referred Plaintiff to pain management and noted that she may need a referral to an orthopedist and a neurologist. (Tr. 384).

Plaintiff returned to Dr. Nguyen on October 20, 2015, with symptoms of seasonal allergies. (Tr. 395). Dr. Nguyen treated Plaintiff conservatively with medication and recommended allergy testing. (Tr. 396).

On November 3, 2015, Plaintiff saw Dr. Satish Gaddam at Sparks Neurology Center. (Tr. 414). Dr. Gaddam assessed Plaintiff with complex regional pain syndrome, noting her normal cervical spine MRI and EMG/NCS. (Tr. 416). Dr. Gaddam also noted that Plaintiff's ability to perform activities of daily living was very limited by severe pain and altered sensation and noted that a referral to pain management was appropriate. (Tr. 416).

On November 24, 2015, a Psychiatric Review Technique was completed by Dr. Jerry Henderson, Ph.D., where he opined that Plaintiff had mild restriction on activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. (Tr. 91). On that same date, Dr. Henderson also completed a Mental RFC Assessment wherein he affirmed the previous August 20, 2015 Mental RFC Assessment completed by Dr. Cogbill. (Tr. 91).

Also, on November 24, 2015, Dr. Clarence Ballard completed a Physical RFC Assessment, affirming the previous Physical RFC Assessment of light work. (Tr. 88).

On January 14, 2016, Plaintiff presented at Fort Smith Sparks Clinic for Pain Management. (Tr. 447). Dr. Patricia Jumelle assessed Plaintiff with chronic regional pain syndrome, anxiety, posttraumatic stress disorder, and myofascial pain. (Tr. 451). Dr. Jumelle

7

noted that Plaintiff was using an over-the-counter TENS unit and noted Plaintiff's previous ganglion block treatment. (Tr. 450). Dr. Jumelle also noted her treatment with Dr. David Beare at Sparks Behavioral Health Services. (Tr. 451). Dr. Jumelle recommended Plaintiff undergo physical therapy. (Tr. 451).

On January 19, 2016, Plaintiff was seen at Sparks Behavioral Health Services by Dr. David Beare, Ph.D. (Tr. 442). Plaintiff reported the following to Dr. Beare: that she had suffered a work injury which lead to pain in her left arm; that she currently had problems with yelling, screaming, and throwing things; that she was often frustrated; and that her orthopedist had told her that her health issues did not exist. (Tr. 442). During the psychological assessment, Plaintiff reported an inability to maintain gainful employment, sleep disturbances, and a history of sexual assault during her childhood, which resulted in posttraumatic stress disorder. (Tr. 444). Based on Dr. Beare's report, Plaintiff was well-groomed, cooperative, and calm; her speech was clear; she was oriented to situation, time, place and person; she was alert and her memory was intact; yet, her mood was irritable and her affect was constricted. (Tr. 444). Dr. Beare diagnosed Plaintiff with depressive disorder, posttraumatic stress disorder, complex regional pain syndrome, type I, and suggested treatment of "depression and somatization." (Tr. 445).

On February 5, 2016, Plaintiff underwent an evaluation and initial examination for physical therapy at Sparks Medical Center. (Tr. 432). Phillip Palmer, D.P.T., noted that Plaintiff was in good spirits; that she had generalized left upper extremity pain associated with complex regional pain syndrome; that Plaintiff was not working and required assistance with activities of daily living, including bathing and dressing; and that Plaintiff had her left arm in a sling position. (Tr. 432). Mr. Palmer's treatment notes indicate that Plaintiff's therapy goals

8

included being able to touch her left arm again, being able to sew again, and regaining her independence in her ability to perform activities of daily living. (Tr. 433). Mr. Palmer recommended Plaintiff attend therapy twice a week for eight weeks. (Tr. 434).

Plaintiff attended physical therapy on the following dates: February 9, February 11, February 16, February 17, March 3, April 5, May 17, May 20, and May 23. At the February 9, 2016, therapy session, progress notes indicate that the therapy exercises were painful, but that Plaintiff was able to complete them. (Tr. 436). At the February 11, 2016, therapy session, Plaintiff reported that she was compliant with her home exercise program. Despite some increased pain and constant numbness, Plaintiff reported, "that's fine, it's working, and that's good." (Tr. 437). On February 16, 2016, Plaintiff reported that she was compliant with her home exercise program "until Friday," but that she had not been compliant since then. Progress notes indicate that Plaintiff tolerated treatment well, that she was interested in aquatic therapy, and that she had some difficulty making a fist secondary to increased sensitivity. (Tr. 438).

On February 17, 2016, treatment notes indicate that Plaintiff reported showering that morning without assistance, but not without difficulty; that she did not have any increase in pain after treatment; that Plaintiff felt better than she thought she would after treatment; that she tolerated treatment well; and that she was motivated to see improvement. (Tr. 440). On March 3, 2016, treatment notes indicate that aquatic therapy was going well; that Plaintiff could really feel the benefits of exercise; and that Plaintiff was tolerable to close proximity and touch to left upper extremity "with assist of abduction from therapist." (Tr. 502). On April 5, 2016, treatment notes indicate that Plaintiff reported that she was "better" and that she tolerated therapeutic exercise well. (Tr. 494). At her April 6, 2016 re-evaluation, treatment notes indicate that Plaintiff had a set back with severe muscle spasms in the left "upper trap" area; that dry

9

needling treatment was providing Plaintiff with relief for the spasms; that Plaintiff was once again progressing; and that Plaintiff was agreeable to continue treatment. (Tr. 497).

Treatment notes from May 17, 2016, indicate that Plaintiff was wearing an arm sleeve to prevent contact with cool air. (Tr. 485). Notes also indicate that Plaintiff reported no increase in pain throughout treatment and that, while her pain remained the same, she felt good after treatment. (Tr. 485). On May 20, 2016, treatment notes indicate that Plaintiff was had improved wrist and hand movement and a decreased pain level. (Tr. 487). Treatment notes from May 23, 2016, indicate that Plaintiff was doing well that day; that her pain level was lowered to 5/10; that her bruising had decreased; and that her progress was "good." (Tr. 488). The May 23, 2016, Discharge Summary from that date showed that Plaintiff was wearing her sleeve that day to prevent exposure to cold air and that she reported pain in "sections" of her arm that were not consistent with dermatome areas of the skin. (Tr. 489). Further, since Plaintiff was halfway through her coverage for therapy, and had received the most benefit from dry needling, she wished to conserve covered treatment for later in the year. Plaintiff understood that she could return to therapy if necessary. (Tr. 489).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that

10

supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and

11

work experience in light of her RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

**IV.  Discussion:**

Plaintiff's sole argument on appeal is that the ALJ erred in his RFC determination that Plaintiff was capable of light work with limitations.

**A.   Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. Although Plaintiff claims that her physical condition results in pain in her left arm, hand and shoulder and prohibits her from being able to grip and hold items, a November 10, 2015, Function Report reveals that Plaintiff had the ability to perform a variety of daily activities, including the ability to drive, to ride in a car, to attend church regularly, to shop in stores for food, clothing and household items, and to manage finances. (Tr. 212-219). In Plaintiff's June 19,

2015, Function Report, Plaintiff stated that she could prepare simple meals, assist with laundry, spend time with her children and grandchildren, walk a mile before stopping to rest, pay attention for long periods, finish what she started, and follow written and spoken instructions well. (Tr. 197-204). Plaintiff's ability to perform such a variety of daily activities suggests that she performs at a fairly high level.

With respect to Plaintiff's physical impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with symptoms. See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). While Plaintiff had continued complaints of pain in her left arm, hand and shoulder throughout the relevant time period, when Plaintiff began physical therapy, treatment notes indicated that her symptoms were improving. (Tr. 437, 487-89, 502).

With regard to Plaintiff's mental impairments, a review of the record showed that Plaintiff saw Dr. David Beare, Ph.D. at Sparks Behavioral Health Services on only one occasion. (Tr. 442-445). Further, other than receiving medication for depression and/or anxiety from her primary care physician, the record does not reflect that she has ever received ongoing inpatient or outpatient treatment for any mental health conditions. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability).

Although it is clear that Plaintiff suffers some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B. ALJ's RFC Determination

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the case at hand, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when determining that Plaintiff could perform light work with limitations. In determining Plaintiff's RFC, the ALJ discussed the medical opinions of treating, examining, and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). The ALJ also took Plaintiff's obesity into account when

14

determining Plaintiff's RFC. Heino v. Astrue, 578 F.3d 873, 881-82 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal). After review of the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

### C. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a public area attendant or a photo finishing counter clerk. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and**

**specific to trigger de novo review by the district court.**

DATED this 1st day of June, 2018.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE